**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| BRIDGET ANN IMSE,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CAUSE NO.: 1:17-CV-24-TLS |

**OPINION AND ORDER**

Plaintiff Bridget Anne Imse seeks review of the final decision of the Acting Commissioner of the Social Security Administration (Commissioner) denying her application for disability insurance benefits and for supplemental security income. The Plaintiff puts forth three bases for remand. For the reasons that follow, the Court affirms the final decision of the Acting Commissioner.

**BACKGROUND**

On October 29, 2013, the Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (R. 19.) She later filed a Title XVI application for supplemental security income on March 26, 2015. (*Id.*) In both applications, she alleged disability beginning June 15, 2011. (*Id.*) Her claims were denied initially on January 10, 2014, and upon reconsideration on March 10, 2014. (*Id.*) Thereafter, the Plaintiff filed a written request for a hearing. (*Id.*) The request was granted and on August 17, 2015, the Plaintiff appeared with counsel and testified at a hearing held before an Administrative Law Judge (ALJ). (*Id.*) Charles

H. McBee, a vocational expert (VE), also appeared and testified at the hearing. (*Id.*) On September 24, 2015, the ALJ denied the Plaintiff's application, finding she was not disabled through the date of the decision. (R. 19–32.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review. (R. 1–4.) On January 22, 2017, the Plaintiff filed this claim [ECF No. 1] in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. §§ 423(d)(2)(A), 1382c(a)(3)(B).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. §§ 404.1520, 416.920. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has been unable to engage in SGA from her alleged onset date, June 15, 2011, to her date last insured, September 30, 2014. (R. 19.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under §§ 404.1520(c), 416.920(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including degenerative disc

disease of the lumbar spine, spinal stenosis of the lumbar spine, bilateral carpal tunnel syndrome, migraine headaches, gastroesophageal reflux disease (GERD), peripheral neuropathy, and fibromyalgia. (R. 21–22.) The ALJ found that the medical evidence established that these impairments significantly affected the Plaintiff's ability to perform basic work activities and accordingly were severe within the meaning of the Social Security Act and regulations. (R. 22.)

The ALJ also found that the Plaintiff suffered from depression, but that the condition did not cause more than a minimal limitation in the claimant's ability to perform basic mental work activities. (*Id.*) In making this determination, the ALJ first examined the Plaintiff's ability to perform activities of daily living and found that the Plaintiff had mild limitation in this functional area. (*Id.*) Next, the ALJ examined the Plaintiff's social functioning, and found the Plaintiff had no limitation in this functional area. (*Id.*) The ALJ then analyzed the Plaintiff's concentration, persistence, or pace capabilities, and determined that the Plaintiff had mild limitations. (*Id.*) Finally, the ALJ determined that the Plaintiff did not experience any episodes of decompensation. (*Id.*) The ALJ therefore found that the Plaintiff's depression was non-severe. (*Id.*)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." §§ 404.1520(d), 416.920(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do, despite her limitations—to determine whether she can perform "past

relevant work" (§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv)), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience" (§§ 404.1520(a)(4)(v), 416.920(a)(4)(v)).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1, and that she had the RFC to perform sedentary work as defined in 20 CFR §§ 404.1567(a), 416.967(a), except that:

> [S]he can stand or walk for a total of two hours every workday. She can only occasionally use foot controls, frequently reach overhead, frequently [perform] all other reaching, frequency handle, frequently finger, and frequently feel. She can occasionally climb ramps and stairs, never climb ladders, ropes, scaffolds, and frequently balance, stoop, kneel, crouch and crawl. She can never have exposure to unprotected heights. The remaining environmental limitations performed on a frequent level include moving mechanical parts, operating a motor vehicle, weather, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, vibration and loud noise.

(R. 23.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled from her alleged onset date through the date of the ALJ's decision (September 24, 2015). (R. 32.) The ALJ held that the objective findings did not support the extreme limitations alleged by the Plaintiff, and the ALJ therefore did not find the Plaintiff fully credible. (*Id.*)

For example, regarding the Plaintiff's physical ailments, the ALJ appears to have examined the pertinent medical evidence and clinical findings regarding the claimant's lower back pain and intermittent bilateral leg pain complaints. The ALJ detailed how in October 2007, the Plaintiff had a MRI performed on her back, which confirmed only "small" central posterior disc protrusion at the L5-S1 vertebral level, no significant encroachment of the spinal canal, no disc herniation, and no spinal stenosis or neuroforaminal narrowing. (*Id.*) Further, there were "mild" degenerative changes at the L4-L5 level, and a physical examination showed some

limitation in forward flexion and extension. (*Id.*) Though the Plaintiff later received treatment for radiating low back pain in September 2013, she concurrently denied chest pain, abdominal pain, decreased motion, headaches, insomnia, or depression. (R. 35.) She did have muscle spasms in her back, but maintained muscle strength throughout. (*Id.*) Her disc spaces were well maintained, and while she still suffered from lumbar pain and degenerative disc disease, she was prescribed conservative treatment, such as physical therapy and Mobic and Neurontin. (*Id.*) The Plaintiff had difficulty complying with the physical therapy requirements, and showed up for three appointments over two and a half months. (R. 26.) In January 2014, the Plaintiff was re-evaluated for lumbar pain. (*Id.*) A lumbar spine image revealed confirmed "mild" lumbar spinal stenosis with minimal spinal and/or foraminal stenosis and "very tiny" central disc extrusion at L5-S1 without compromise. (*Id.*)

Additionally, the ALJ reviewed the evidence surrounding Plaintiff's mental health and its treatment. First, the ALJ examined the record to assess any limitations in the four functional areas set out in the disability regulations for evaluating mental disorders (R. 22), as explained above. The ALJ considered both the Plaintiff's testimony and her own function report in making these determinations. (*Id.*) The ALJ also reviewed the Plaintiff's mother's functional report in making this decision, but gave greater weight to the objective medical record and the longitudinal clinical presentation. (R. 30.)

The ALJ also reviewed a report Wayne J. Von Bargen, Ph.D, from July 2015. (R. 28). In the report, Dr. Von Bargen noted that the Plaintiff's cognitive functioning appeared to be grossly intact and that she could manage her own funds, adequately care for herself, and perform brief, non-strenuous activities. (*Id.*) Dr. Von Bargen also included a medical source statement, where he opined that the Plaintiff's mental impairment did not affect her ability to understand,

remember, or carry out instructions. (*Id.*) He also briefly noted that her other medical issues could potentially affect her attendance and productivity. (*Id.*)

Next, the ALJ examined a consultative physical examination performed by H.M. Bacchus, Jr., M.D. (*Id.*) During the examination, the Plaintiff alleged she was "somewhat" depressed, but Dr. Bacchus noted that she could follow simple instructions and directions. (*Id.*) Dr. Bacchus also examined the Plaintiff's physical health, and concluded that she could perform a reduced range of medium exertion work with restrictions when sitting, standing, and walking, such as using her hands or foot controls, or with other postural and environmental limitations. (*Id.*)

The ALJ concluded that the entire record did not reflect that the Plaintiff's depression was severe. (R. 29.) The Plaintiff never required a psychiatric hospitalization. (*Id.*) Her treatment often did not include medications or therapy, and her mental status examinations often reported no deficits. (*Id.*) Further, Dr. Von Bargen opined that she could understand, remember, and carry out instructions despite her depressive symptoms. (*Id.*) From this, the ALJ concluded that the Plaintiff's depression was non-severe and did not require a limitation in the RFC. (*Id.*)

Upon evaluating the medical findings and determining the Plaitniff's RFC, the ALJ found that the Plaintiff was unable to perform any past relevant work as an assistant manager, counter clerk photo specialist, loader/unloader/stocker, cashier, or daycare worker. However, relying on the vocational expert's testimony, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 31) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act since her alleged onset date. (R. 32.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court examines the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 305–06. The Court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [the ALJ's] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required

to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff raises three issues on appeal. First, the Plaintiff contends the ALJ erred by relying on an "irrational on its face RFC which also is incongruent with the record." Second, the Plaintiff asserts that the RFC is not supported by substantial evidence. Third, the Plaintiff argues that the ALJ erred by not including any psychological limitations in the RFC, despite testimony from an SSA consultative examiner. These will be discussed in turn.

### A. The Physical Limitations in the RFC are Not Irrational on Their Face and are Supported by Substantial Evidence

The Plaintiff first argues that the ALJ relied on an "irrational on its face RFC which also is incongruent with the record." The Plaintiff so argues because the RFC includes frequent balancing and stooping, but also limited her to standing or walking for up to two hours in an eight hour workday. The Plaintiff contends that because balancing and stooping are inconsistent with sedentary work, the RFC is irrational on its face and incongruent with the record. However, "[n]othing about this is inconsistent, as the Court reads 'frequent balancing' as applying to the two hours when the Plaintiff could stand or walk." *Workman v. Comm'r of Soc. Sec.*, 1:16-CV-

288, 2017 WL 3484741, at *4 (N.D. Ind. Aug. 15, 2017). The Court does not find the RFC "irrational on its face," and proceeds to the Plaintiff's next argument: that the physical limitations in the RFC are not supported by substantial evidence.

Importantly, and as stated previously, while the Court examines the entire record, it will not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, or resolving conflicts in evidence. *See Diaz*, 55 F.3d at 305–06. The Plaintiff has highlighted several areas of the record in its brief which detail several of the Plaintiff's physical limitations, such as her spinal conditions, inflammation issues, abdominal pain, chronic headaches, and treatment for fibromyalgia. But the ALJ also examined all of these pieces of evidence in his decision. (R. 23–30.) After reviewing the evidence, the ALJ built a logical bridge to his ultimate conclusion regarding the RFC. The ALJ discounted evidence provided by physicians that was adverse to the Plaintiff regarding her physical limitations when it was inconsistent with later evidence that showed that the Plaintiff indeed had physical limitations. (R. 30.) The Plaintiff has not pointed to any logical flaws in the ALJ's discussion of the issue. (R. 23–30.) As such, the Plaintiff has, in essence, asked the Court to reweigh the evidence and come to a different conclusion than the one delivered by the ALJ regarding the Plaintiff's physical limitations. The Court declines to do so.

### B. Substantial Evidence Supports the ALJ's Decision Regarding the Plaintiff's Mental Health Limitations

The Plaintiff next contends that substantial evidence does not support the RFC because the RFC does not include mental health limitations. The Plaintiff appears to argue that her mental health issues, specifically depression and anxiety, negatively affect her ability to regularly attend

work. She points to the July 2015 consultative exam performed by Wayne Von Bargen, Ph.D. (R. 897–90.) In response to the question whether "any other capabilities" would be affected by the Plaintiff's impairment, Dr. Von Bargen cited "[a]ttendance and productivity." (R. 901.) When asked to "[i]dentify the factors (e.g., the particular medical signs, laboratory findings, or other factors described above) that support your assessment, he wrote "may be poor due to medical issues."(*Id.*) The ALJ gave great weight to Dr. Von Bargen's consultative psychological assessment, but only to the extent that he found that the Plaintiff's depressive disorder did not affect her ability to understand, remember, and carry out instructions. (R. 30.) The Plaintiff argues that "when an ALJ does outright reject or even discount an examining SSA doctor's opinion, he must provide a good explanation for doing so." *Lear v. Comm'r of Soc. Sec.*, No. 2:14-CV-307, 2016 WL 1165682, at *3 (N.D. Ind. Mar. 24, 2016) (citing *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014)). The Plaintiff contends that the ALJ did not give a good explanation for discounting Dr. Von Bargen's brief note that suggests that the Plaintiff may have issues with attendance and productivity, which may be poor due to medical issues.

The ALJ, however, did provide an explanation for his ultimate conclusion regarding the Plaintiff's mental health. The ALJ examined Dr. Von Bargen's entire report, and noted that Dr. Von Bargen opined that other medical issues could affect the Plaintiff's attendance and productivity at work. (R. 28, 30.) However, that particular comment was not supported by any factors, and the report also reflected that the Plaintiff can understand, remember, and carry out instructions (R. 900.) The report further reflected that the Plaintiff can interact appropriately with supervisors, co-workers, and the public, and can also respond to changes in routine work setting (R. 901.) Dr. Von Bargen further found that the Plaintiff can manage benefits in her own best interest. (R. 902.) These findings, in the same report, do not suggest that additional functional

limitations should have been included in the Plaintiff's RFC. The ALJ examined all of Dr. Von Bargen's findings, as well as the record as a whole, and concluded that the RFC did not need mental health limitations. Because the ALJ's decision demonstrates that he reviewed Dr. Von Bargen's entire report and addressed Dr. Von Bargen's overall findings, including smaller assessments within the report, the error (if any) in assignment of weight to particular, smaller assessments within the report is harmless. *See Lloyd v. Berryhill*, 682 F. App'x 491, 497 (7th Cir. 2017) (holding that any error in assigning a specific weight to a physician's smaller assessment is harmless error when an ALJ thoroughly addresses the physician's overall findings). The Court declines to re-weigh the medical evidence and Dr. Von Bargen's assessments to draw its own conclusion, particularly for statements that Dr. Von Bargen himself did not support.

**CONCLUSION**

Accordingly, the Court AFFIRMS the decision of the Acting Commissioner of the Social Security Administration.

SO ORDERED on February 20, 2018.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT